**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KAREN CARTER and ARTHUR PODROYKIN,<br><br>Plaintiffs,<br><br>v.<br><br>MYHERITAGE (USA) INC. and MYHERITAGE LTD CORPORATION,<br><br>Defendants. | Case No.: 1:25-cv-224 (JHL)<br><br>Judge: Hon. Joan H. Lefkow<br><br>Complaint Filed: January 8, 2025 |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND**
**TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 5

I. PLAINTIFFS ENGAGE IN IMPERMISSIBLE GROUP PLEADING ..... 5

II. PLAINTIFFS LACK ARTICLE III STANDING TO SUE MYHERITAGE (USA) ..... 5

III. PLAINTIFFS' CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION ..... 6

A. Plaintiffs Assented To Arbitration ..... 7

B. Either The Arbitrator Should Decide Whether Plaintiffs' Claims Fall Within The Arbitration Clause Or This Court Should Find That They Do ..... 8

IV. PLAINTIFFS' CLAIMS ARE TIME-BARRED ..... 9

V. DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS ..... 12

A. Neither Defendant Is "At Home" In Illinois ..... 13

B. There Is No Basis To Exercise Specific Jurisdiction Over Either Defendant ..... 13

VI. VENUE IS IMPROPER IN THIS DISTRICT ..... 15

A. The Court Should Dismiss This Case For Improper Venue Or Transfer It To The District of Delaware Per The Parties' Agreement ..... 15

B. If The 2024 T&C Do Not Apply, The Israeli Forum Selection Clause In The 2019 T&C Requires Dismissal For Forum Non Conveniens ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Raintree Vacation Exch., LLC*,
702 F.3d 436 (7th Cir. 2012) ........ 17

*Atkins v. Hasan*,
2015 WL 3862724 (N.D. Ill. June 22, 2015) ........ 5

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*,
571 U.S. 49 (2013) ........ 16, 17

*Atlas Data Priv. Corp. v. Blackbaud, Inc.*,
757 F. Supp. 3d 605 (D.N.J. 2024) ........ 3, 6

*Ayyash v. Horizon Freight Sys., Inc.*,
2018 WL 5994755 (N.D. Ill. Nov. 15, 2018) ........ 16

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ........ 5

*Bazile v. Fin. Sys. of Green Bay, Inc.*,
983 F.3d 274 (7th Cir. 2020) ........ 6

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ........ 15

*Bonilla v. Ancestry.com Operations Inc.*,
574 F. Supp 3d 582 (N.D. Ill. 2021) ........ 15

*Chamberlain Grp., Inc. v. Techtronic Indus. N.A., Inc.*,
2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) ........ 5

*Chesapeake Ins. Advisors, Inc. v. DeSola*,
2018 WL 565306 (Del. Super. Ct. Jan. 24, 2018) ........ 12

*Cox v. Jed Cap., LLC*,
2016 WL 5846681 (Ill. App. 2016) ........ 11

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 13

*In re Dean Witter P'ship Litig.*,
1998 WL 442456 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) ........ 11

*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023) .......... 6

*Druco Rest., Inc. v. Steak N Shake Enters., Inc.*,
765 F.3d 776 (7th Cir. 2014) .......... 7

*Eni Hldgs., LLC v. KBR Grp. Hldgs., LLC*,
2013 WL 6186326 (Del. Ch. Nov. 27, 2013) .......... 10

*Fin. Fiduciaries, LLC v. Gannett Co.*,
46 F.4th 654 (7th Cir. 2022) .......... 4

*Fitzpatrick v. Lens.com Inc.*,
2024 WL 4555337 (N.D. Ill. Oct. 23, 2024) .......... 4

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*,
565 F.3d 1018 (7th Cir. 2009) .......... 15

*Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*,
2024 WL 621601 (N.D. Ill. Feb. 14, 2024) .......... 12

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) .......... 9

*Gulley v. Nordstrom, Inc.*,
2014 WL 296034 (N.D. Ill. Jan. 27, 2014) .......... 8

*Haymarket DuPage, LLC v. Vill. of Itasca*,
2024 WL 809110 (N.D. Ill. Feb. 27, 2024) .......... 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 9

*Hopkins v. Dell Techs., Inc.*,
2023 WL 3791722 (S.D. Ill. June 2, 2023) .......... 9

*Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Hldgs, Inc.*,
29 F.4th 351 (7th Cir. 2022) .......... 17

*Kelley v. MailFin. Inc.*,
436 F. Supp. 3d 1136 (N.D. Ill. 2020) .......... 17

*Matlin v. Spin Master Corp.*,
921 F.3d 701 (7th Cir. 2019) .......... 13, 14

*Miracle-Pond v. Shutterfly, Inc.*,
2020 WL 2513099 (N.D. Ill. May 15, 2020) .......... 7, 8

*Mueller v. Apple Leisure Corp.*,
880 F.3d 890 (7th Cir. 2018) ....................17

*Nezri v. PayPal, Inc.*,
606 F. Supp. 3d 985 (C.D. Cal. 2022)....................8

*Pavlock v. Holcomb*,
35 F.4th 581 (7th Cir. 2022) ....................6

*Pepper v. Tailor*,
2023 WL 6214101 (N.D. Ill. Sept. 24, 2023)....................9

*Philos Techs., Inc. v. Philos & D, Inc.*,
802 F.3d 905 (7th Cir. 2015) ....................14

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ....................17

*Pomerantz v. Int'l Hotel Co.*,
359 F. Supp. 3d 570 (N.D. Ill. 2019) ....................17

*Reineke v. Cir. City Stores, Inc.*,
2004 WL 442639 (N.D. Ill. Mar. 8, 2004)....................8

*Resnick v. Schwartz*,
430 F. Supp. 3d 492 (N.D. Ill. 2019) ....................12

*Richter v. INSTAR Enters. Int'l, Inc.*,
594 F. Supp. 2d 1000 (N.D. Ill. 2009) ....................13

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ....................11, 12

*Scherer v. Balkema*,
840 F.2d 437 (7th Cir. 1988) ....................11, 12

*Schwarz v. Sellers Mkts., Inc.*,
812 F. Supp. 2d 932 (N.D. Ill. 2011) ....................17

*Sean Morrison Ent., LLC v. Thompson*,
2011 WL 6934828 (N.D. Ill. Dec. 28, 2011)....................15

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016)....................7

*Sierra Club v. Franklin Cty. Power of Ill., LLC*,
546 F.3d 918 (7th Cir. 2008)....................6

*Smagala v. Owen*,
717 N.E.2d 491 (Ill. App. 1999) .......... 11

*Sroga v. Laboda*,
748 F. App'x 77 (7th Cir. 2019) .......... 4

*Taylor v. W. & S. Life Ins.*,
966 F.2d 1188 (7th Cir. 1992) .......... 10

*Thakkar v. ProctorU Inc.*,
571 F. Supp. 3d 927 (C.D. Ill. 2021) .......... 16

*Vaughan v. Biomat USA, Inc.*,
2022 WL 1266389 (N.D. Ill. Apr. 28, 2022) .......... 5

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 14

*Wilhelm v. BAM Trading Servs., Inc.*,
2024 WL 2274326 (N.D. Ill. May 20, 2024) .......... 8

*Wood v. Carpenter*,
101 U.S. 135 (1879) .......... 12

*In re Zinc Antitrust Litig.*,
155 F. Supp. 3d 337 (S.D.N.Y. 2016) .......... 5

*Zurich Am. Ins. v. Watts Indus., Inc.*,
466 F.3d 577 (7th Cir. 2006) .......... 7

**Rules / Statutes**

28 U.S.C. § 1391(b)(2) .......... 15

28 U.S.C. § 1404(a) .......... 16

28 U.S.C. § 1406 .......... 16

735 Ill. Comp. Stat. 5/2-209(c) .......... 13

Fed. R. Civ. P. 8 .......... 5

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(2) .......... 1

Fed. R. Civ. P. 12(b)(3) .......... 1, 16

Fed. R. Civ. P. 12(b)(6) .......... 1

Defendants MyHeritage (USA) Inc. ("MyHeritage (USA)") and MyHeritage Ltd. ("MyHeritage Ltd.")[1] move to (1) compel arbitration of all claims in Plaintiffs Karen Cater[2] and Arthur Podroykin's Amended Consolidated Class Action Complaint ("ACAC"), (2) dismiss the ACAC in its entirety for lack of standing under Rule 12(b)(1), for lack of personal jurisdiction under Rule 12(b)(2), and as time-barred under Rule 12(b)(6), or (3) transfer or dismiss this case for improper venue.

## INTRODUCTION

Plaintiffs allege they are users of www.myheritage.com ("the Website"). The Website enables users to create online family trees and do genetic testing. Plaintiffs claim that they submitted samples to Defendants for testing and that Defendants subsequently disclosed genetic information to Google without their knowledge. But Plaintiffs got the "***who***, ***what***, ***when***, and ***where***" of this lawsuit all wrong, requiring dismissal of the ACAC with prejudice.

First, the ***who***: Plaintiffs initially sued the wrong defendant by naming only MyHeritage (USA). *See* ECF No. 16 ("Consolidated Class Action Complaint"). Plaintiffs' ACAC again names MyHeritage (USA) as a Defendant. But MyHeritage (USA) does not operate the Website. It operates a ***different*** website, which is not at issue. Accordingly, Plaintiffs lack standing to sue MyHeritage (USA). Moreover, the ACAC improperly lumps MyHeritage (USA) and MyHeritage Ltd. together and fails to allege facts specific to each Defendant. Plaintiffs' impermissible "group pleading" is an independent ground for dismissal.

Second, the ***what***: Plaintiffs filed a federal lawsuit, but can assert claims only in arbitration.

[1] Plaintiffs have named "MyHeritage Ltd Corporation" as a defendant in this latest complaint. That entity's name, however, is "MyHeritage Ltd."

[2] Plaintiffs' counsel advised that Plaintiff "Karen Carter" is actually named Karen Cater prior to MyHeritage (USA) moving to dismiss the Consolidated Class Action Complaint. Even so, Plaintiffs' attorneys have continued to misspell their lead plaintiff's name in the ACAC.

Plaintiffs assented to the Website's Terms & Conditions ("T&C"), thereby agreeing to arbitrate "any dispute, actions, or controversies between you, MyHeritage, or any involved third party" relating to the Website. Plaintiffs' claims indisputably fall within this scope.

Third, the ***when***: Plaintiffs filed this action after the limitations period expired. Via the T&C, Plaintiffs agreed to a one-year limitations period. Because Plaintiffs did not sue until January 2025—more than one year *after* their purported claims accrued—the ACAC is time-barred. Plaintiffs' new tolling allegations do not save their claims because inquiry notice (not actual notice) is sufficient to start the limitations period, and Plaintiffs allege they ***immediately*** began seeing targeted ads after providing their Genetic Testing Information through the Website—more than one year before commencing suit.

Finally, the ***where***: Plaintiffs sued Defendants in a state where neither Defendant is subject to personal jurisdiction, and in an improper venue. MyHeritage (USA) is a Delaware company with its principal place of business in Utah. MyHeritage Ltd. is an Israeli company with its principal place of business in Israel. No unlawful acts or omissions occurred in Illinois, and Plaintiffs' claims do not arise from either Defendant's contacts with Illinois. The Court therefore lacks personal jurisdiction over either Defendant. Venue is improper for similar reasons and because the T&C contain a forum selection clause designating Delaware as the exclusive venue.

The ACAC is Plaintiffs' third complaint. Plaintiffs' claims are still untimely. They still fail for lack of standing, jurisdiction, and venue. And they still should have been brought, if at all, in arbitration. The Court should dismiss with prejudice.

## BACKGROUND[3]

The ACAC alleges MyHeritage is "a direct-to-consumer ('DTC') genetic testing kit

---

[3] Defendants treat the ACAC's well-pled facts as true for purposes of this motion, except as noted. Plaintiff Cater filed the original complaint on January 8, 2025. ECF No. 1. Plaintiff Podroykin

provider that uses DNA testing to identify its customers' 'unique ethnic background.'" ACAC ¶ 9. While Plaintiffs assert that Defendant MyHeritage (USA) owns and operates the Website, *id.* ¶¶ 9-11, they are wrong. The Website is owned and operated by Defendant MyHeritage Ltd. Declaration of Gilad Japhet ("Japhet Decl.") ¶ 3. MyHeritage (USA) operates a different website, Geni.com. *Id.* ¶ 6. A court recently dismissed MyHeritage (USA) from a lawsuit on the basis that it is a "total stranger" to and "has no involvement whatsoever with" the Website. *Atlas Data Priv. Corp. v. Blackbaud, Inc.*, 757 F. Supp. 3d 605, 618 (D.N.J. 2024).

Plaintiffs allege that "[t]o use Defendants' genetic testing service, consumers purchase one of Defendants' test kits through [the Website], or from a third-party retailer, and provide a saliva sample to the Defendants for analysis." ACAC ¶¶ 10, 82.[4] They further allege that "[t]o receive their genetic testing results, Defendants' customers … are required to register on [the] Website." *Id.* ¶¶ 11, 83.

MyHeritage (USA) is a Delaware corporation with its principal place of business in Utah. ACAC ¶ 36. MyHeritage Ltd. is an Israeli corporation with its principal place of business in Israel. *Id.* ¶ 37. Plaintiffs allege they are Illinois residents. *Id.* ¶¶ 20, 27. Plaintiff Cater claims she purchased a genetic test kit from Defendants in November 2023 and visited the Website to review her test results. *Id.* ¶¶ 21-22. Plaintiff Podroykin likewise alleges he purchased a test kit from Defendants in May 2021 and visited the Website to review his test results. *Id.* ¶¶ 28-29.

When creating their accounts, Plaintiffs agreed to the 2019 T&C, which permitted MyHeritage Ltd. to "modify this Agreement … at any time" and provided that "[c]ontinued

---

filed the related case, *Podroykin v. MyHeritage (USA) Inc.*, 1:25-cv-402, on January 14, 2025. The Court consolidated the cases on March 11, 2025. *See* ECF No. 13.

[4] Contrary to Plaintiffs' allegations regarding saliva samples, MyHeritage.com's testing kit collects samples via a cheek swab. Japhet Decl. ¶ 21.

use … means that you have accepted and are bound by the changes."[5] Japhet Decl., Ex. B ("2019 T&C") at 13.[6] Plaintiffs further agreed that "any claim or cause of action, arising out of or related to use of the DNA Services or this Section, must be filed within one (1) year after such claim or cause of action arose." *Id*. The 2019 T&C also contained a governing law provision requiring any dispute regarding the service be "brought exclusively to the courts located in Tel Aviv, Israel." *Id*. at 14. In June 2024, MyHeritage Ltd. updated the T&C to include a Delaware forum selection clause and a provision mandating arbitration for "any dispute, actions, or controversies between [users], MyHeritage, or any involved third party" relating to the Website, and stating that "[t]he arbitrator shall have the exclusive and sole authority to determine all threshold arbitrability issues, including whether any Claim is arbitrable." Japhet Decl., Ex. C ("2024 T&C") at 22, 24. The Website prominently displayed an "Updated" banner regarding the updated T&C, and the updated terms advised users that they could opt-out within 30 days. Japhet Decl. ¶ 19; 2024 T&C at 26. Plaintiffs did not opt out and, contrary to Plaintiff Cater's latest allegation that she ceased using the Website after November 2023, both Plaintiffs continued using the Website thereafter. Japhet Decl. ¶ 20.

---

[5] While Plaintiffs do not allege the exact dates they created their accounts, both signed up during the period when the 2019 T&C were in effect. The 2019 T&C were periodically revised, but until June 2024—when the 2024 T&C were put into effect—those revisions did not affect sections relevant to this Motion. Japhet Decl. ¶ 15.

[6] The Court may take judicial notice of the T&C. *See, e.g.*, *Sroga v. Laboda*, 748 F. App'x 77, 78 (7th Cir. 2019) (taking judicial notice of online auction terms and conditions); *Fitzpatrick v. Lens.com Inc.*, 2024 WL 4555337, *1 (N.D. Ill. Oct. 23, 2024) (taking judicial notice of shopping website's terms and conditions, website images, and affidavit describing website's checkout process). Moreover, the Privacy Policy cited by Plaintiffs, ACAC ¶¶ 12 & n.3—which Plaintiffs allege binds Defendants, *id.* ¶ 92—incorporates the T&C. *Cf. Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (courts may consider documents that are central to the plaintiff's claim to "prevent[ ] a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case").

## ARGUMENT

## I. PLAINTIFFS ENGAGE IN IMPERMISSIBLE GROUP PLEADING

"A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Where, as here, a complaint names more than one defendant, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Vaughan v. Biomat USA, Inc.*, 2022 WL 1266389, *2 (N.D. Ill. Apr. 28, 2022) (quoting *Knight*, 725 F.3d at 818). Details about "who did what are not merely nice-to-have features of an otherwise-valid complaint." *Atkins v. Hasan*, 2015 WL 3862724, *2 (N.D. Ill. June 22, 2015). Rule 8 requires as much. *Id.*; *see* Fed. R. Civ. P. 8.

Having decided to name both MyHeritage (USA) and MyHeritage Ltd. as defendants, Plaintiffs must include allegations about what each Defendant did. Plaintiffs' "group pleading" fails to satisfy Rule 8's pleading requirements. Except for listing their respective principal places of business, ACAC ¶¶ 36-37, Plaintiffs fail to allege *any* facts specific to each Defendant. The two entities are instead generically referred to as "Defendants" or collectively as "MyHeritage" throughout the ACAC. *See Chamberlain Grp., Inc. v. Techtronic Indus. N.A., Inc.*, 2017 WL 4269005, *3 (N.D. Ill. Sept. 26, 2017) (dismissing claims against corporate defendants where the "complaint tells us nothing about the individual actions of, or the relationships between, the various [] defendants"); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) ("grouping multiple defendants who are affiliated together with a single name" does not satisfy Rule 8). "The fact that two separate legal entities may have a corporate affiliation" does not alter Rule 8's "pleading requirement." *Id.* Because the ACAC fails to specify what each Defendant is alleged to have done, it must be dismissed.

## II. PLAINTIFFS LACK ARTICLE III STANDING TO SUE MYHERITAGE (USA)

"'[S]tanding contains three elements' that a plaintiff must plead and—ultimately—prove."

*Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). These are: (1) a "personal injury"; (2) "fairly traceable to the defendant's allegedly unlawful conduct"; and (3) "likely to be redressed by the requested relief." *Pavlock v. Holcomb*, 35 F.4th 581, 588 (7th Cir. 2022). Where, as here, a defendant mounts a factual challenge to standing, "the court may consider and weigh evidence outside the pleadings." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). The plaintiff's allegations are not presumed true and a plaintiff "must support each controverted element" by a "preponderance of the evidence" that standing exists. *Id.* at 278.

Plaintiffs fail to establish traceability as to MyHeritage (USA). Courts routinely find a lack of traceability where, as here, "a plaintiff sues a defendant about a decision made by someone else." *Haymarket DuPage, LLC v. Vill. of Itasca*, 2024 WL 809110, *12-15 (N.D. Ill. Feb. 27, 2024) (collecting cases); *see also Sierra Club v. Franklin Cty. Power of Ill., LLC*, 546 F.3d 918, 926 (7th Cir. 2008) (complaint fails traceability where "third party not before the court' cause[d] [the] injury"). The Website is maintained by MyHeritage Ltd. Japhet Decl. ¶ 3. MyHeritage (USA) operates a *different* website, Geni.com, which is not at issue. *Id.* ¶ 6. At least one other federal court concluded that MyHeritage (USA) is a "total stranger" to the Website, "has no involvement whatsoever with [www.myheritage.com]," "has no role in deciding what information is available on" the Website, "and has no ability to remove information." *Atlas*, 757 F. Supp. 3d at 618 (dismissing MyHeritage (USA) at pleading stage on the ground of fraudulent joinder). Because MyHeritage (USA) had nothing to do with the alleged misconduct, Plaintiffs' claims against MyHeritage (USA) fail for lack of traceability. *See Pavlock*, 35 F.4th at 590 (no traceability when injury results from third party's independent actions).

## III. PLAINTIFFS' CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed

to arbitration." *Zurich Am. Ins. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Each element is satisfied here.

**A. Plaintiffs Assented To Arbitration**

Ordinary contract formation principles apply when determining whether parties agreed to arbitrate. *Druco Rest., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). Relevant here, the key inquiry is whether the website adequately communicated all the terms and conditions to the consumer and "whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). This standard is satisfied when a website contains "a clear and conspicuous statement" that users agree to terms "by clicking a link or pressing a button," as "a reasonable user who completes that process would understand that she was manifesting assent to the Terms." *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, *4 (N.D. Ill. May 15, 2020).

The sign-up process here ensured clear notice and assent. Plaintiffs agreed to the 2019 T&C, which expressly permitted MyHeritage Ltd. to "modify this Agreement … at any time" and provided that "[c]ontinued use … means that you have accepted and are bound by the changes." 2019 T&C at 13; *see also id.* at 14 ("Whenever this Agreement is modified in substance, the label **updated** will be displayed prominently next to the link 'Service Terms' that leads to this Agreement, in the footer of the pages of the Service." (emphasis in original)). Both Plaintiffs Cater and Podroykin created their accounts after being shown a message stating "[b]y signing up, you agree to the Service terms and Privacy Policy," with the phrase "Service terms" linking to the T&C. Japhet Decl. ¶¶ 9, 13; *see also id.* Ex. A. That message was displayed under the "Continue" button, which users were required to click to complete the sign-up process. *See* Ex. A.

In June 2024, MyHeritage Ltd. updated the T&C to include an arbitration provision and a Delaware forum selection clause. 2024 T&C at 22-24. The Website displayed an "Updated"

banner notifying users of the new T&C, and the updated terms advised users that they could opt-out within 30 days. Japhet Decl. ¶ 19; 2024 T&C at 26. Both Plaintiffs continued using the Website following this amendment; neither opted out. Japhet Decl. ¶ 20.[7]

Where, as here, a plaintiff has previously agreed to a valid set of terms and conditions, and those terms contemplate that the defendant may amend them at-will, the plaintiff's "continued use of [the defendant's] services indicates acceptance of [any subsequent] modifications." *Miracle-Pond*, 2020 WL 2513099, *6 (enforcing arbitration provision added via unilateral update because "[a]s long as the parties agree that one party may unilaterally modify the terms of the contract, a unilateral modification is not illusory"); *Wilhelm v. BAM Trading Servs., Inc.*, 2024 WL 2274326, *4 (N.D. Ill. May 20, 2024) (enforcing arbitration provision added via unilateral update where, under the original terms and conditions, defendant "retained the right to propose amendments that would take effect if they were communicated to [the plaintiff] by email or online and if she took no affirmative steps to reject them," and plaintiff did not opt out); *accord Nezri v. PayPal, Inc.*, 606 F. Supp. 3d 985, 995-96 (C.D. Cal. 2022) (applying Delaware law, enforcing arbitration agreement with unilateral modification provision where defendant provided "notice and opt-out clauses").

### B. Either The Arbitrator Should Decide Whether Plaintiffs' Claims Fall Within The Arbitration Clause Or This Court Should Find That They Do

The parties agreed to delegate to the arbitrator the "exclusive and sole authority to determine all threshold arbitrability issues, including whether any Claim is arbitrable." 2024 T&C

[7] "The court may consider evidence outside the pleadings, because a motion to compel arbitration is treated as an assertion that the court lacks subject matter jurisdiction." *Gulley v. Nordstrom, Inc.*, 2014 WL 296034, *1 (N.D. Ill. Jan. 27, 2014); *see also Reineke v. Cir. City Stores, Inc.*, 2004 WL 442639, *1 (N.D. Ill. Mar. 8, 2004) ("[F]or purposes of this motion [to compel arbitration], the court draws the background facts from the parties' pleadings, but will also consider attached exhibits and affidavits.").

at 24. Where, as here, the parties "delegate[ ] the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). If the Court does not dismiss outright, it should stay this matter and compel arbitration so an arbitrator may determine the arbitrability of Plaintiffs' claims. *Hopkins v. Dell Techs., Inc.*, 2023 WL 3791722, *6 (S.D. Ill. June 2, 2023) (language granting arbitrator "exclusive authority to resolve any arbitrability issues" required court to "refer to the arbitrator the question of the agreement's arbitrability and scope"). But even if the Court were to resolve the arbitrability question, it should find Plaintiffs' claims fall squarely within the clause. The 2024 T&C contain a broad arbitration clause, requiring arbitration of:

> [A]ny dispute, actions, or controversies between you, MyHeritage, or any involved third party relating to your account, the Website or Service, your relationship with MyHeritage, communications from or with MyHeritage, this Agreement (including those relating to the formation, breach, termination, enforcement, interpretation, validity, scope, or applicability of the Terms and this arbitration agreement), the Privacy Policy, the DNA Informed Consent, and any documents or agreements incorporated by reference in any of the foregoing.

2024 T&C at 22. The provision's "relating to" language is read "broadly" and "expansive[ly]," and "necessarily" creates a "presumption of arbitrability" as to underlying disputes. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032–33 (7th Cir. 2012). Moreover, there is no serious dispute that Plaintiffs' claims—all of which "relat[e] to" their alleged use of "the Website" and their "account[s]"—fall within the scope of the arbitration agreement. *See Pepper v. Tailor*, 2023 WL 6214101, *3 (N.D. Ill. Sept. 24, 2023) ("[The arbitration provision] is broadly worded to include 'any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to' rideshare services. That is what the present lawsuit involves.").

## IV. PLAINTIFFS' CLAIMS ARE TIME-BARRED

In consenting to the T&C, Plaintiffs agreed that "any claim or cause of action, arising out of or related to use of the DNA Services … must be filed within one year after such claim or cause

of action arose." 2024 T&C at 20; 2019 T&C at 13.[8] Plaintiffs' claims "aris[e] out of [and are] related to use of the DNA Services" and are thus untimely. 2024 T&C at 20; 2019 T&C at 13.[9]

Parties may shorten the limitations period for claims arising from the parties' contractual relationship so long as the agreed limitations period is reasonable and not inconsistent with public policy. *See Taylor v. W. & S. Life Ins.*, 966 F.2d 1188, 1203-04 (7th Cir. 1992); *accord Eni Hldgs., LLC v. KBR Grp. Hldgs., LLC*, 2013 WL 6186326, *7 (Del. Ch. Nov. 27, 2013).[10] The one-year limitations period to which Plaintiffs agreed meets this standard: it gave Plaintiffs ample time to discover their claims and decide whether to pursue them. Because Plaintiffs allege they purchased their genetic test kits in 2021 and 2023, respectively, but did not file this lawsuit until 2025, their claims accrued more than one year earlier and are therefore time-barred. *See* ACAC ¶ 21 (Plaintiff Cater purchased her genetic test kit "[i]n or around November of 2023"); *id.* ¶ 28 (Plaintiff Podroykin purchased his genetic test kit "[i]n or around May 2021").[11]

Plaintiffs' attempted reliance on the discovery rule to end-run the contractual limitations period, *see* ACAC ¶¶ 108-15, should be rejected. Applying the discovery rule would "disrupt the contractually-negotiated balance of risk the parties agreed to." *Eni Hldgs.*, 2013 WL 6186326, *14 (cleaned up). As a result, "application of the discovery rule to toll a contractual limitations

---

[8] The same language appears in the 2019 T&C and 2024 T&C; Plaintiffs are bound by this provision even if they are found not to have assented to the 2024 T&C.

[9] The 2024 T&C define "DNA Services" broadly to include: "a) submitting DNA samples, b) uploading DNA data files from other DNA services, c) receiving and interacting with genetic genealogy analysis … ; d) receiving and interacting with genetic health analysis … ; and e) downloading … raw DNA data." 2024 T&C at 1; *see also* 2019 T&C at 1 (similar).

[10] Although the 2024 T&C specify a Delaware choice-of-law provision, the choice-of-law tests under Delaware law and Illinois law are functionally similar.

[11] Cater never actually purchased a genetic test kit from the Website in 2023, but instead uploaded data from another company's testing kit to the Website in 2021. Japhet Decl. ¶ 10. Podroykin purchased his test and obtained his results even earlier, in 2020. Japhet Decl. ¶ 12. At any rate, even accepting the ACAC's incorrect allegations as true, Plaintiffs' claims are time-barred.

period is inappropriate." *Id.* The T&C include a specific and clear limitation to assert claims. Plaintiffs chose to use the Website subject to the T&C, and thus they "must be held to their bargain." *Id.*; *Smagala v. Owen*, 717 N.E.2d 491, 496 (Ill. App. 1999) (discovery rule inapplicable when contractual limitations period is "clear and unambiguous").

In all events, the discovery rule applies only when there are "no observable or objective factors to put a party on notice of an injury." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, *5 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999); *accord Cox v. Jed Cap., LLC*, 2016 WL 5846681, *6 (Ill. App. 2016) (inquiry notice, not actual notice, is sufficient to commence limitations period). Plaintiffs allege that "[a]fter providing [their] Genetic Testing Information to Defendants through the Website, [they] ***immediately*** began seeing targeted online advertisements for genetic testing products." ACAC ¶¶ 26, 35 (emphasis added). Plaintiffs' new allegations that the tracking pixels were "invisible" to users such that they "could not reasonably discover Defendants' deception," ACAC ¶¶ 109-10, do not alter the analysis because Plaintiffs' own allegations regarding targeted advertisements demonstrate that they were on inquiry notice. Plaintiffs were on notice of all facts necessary to pursue their claims after providing their information to the Website—more than one year before filing suit. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, *10 (C.D. Cal. Feb. 27, 2025) (plaintiff had inquiry notice when she began seeing ads).

Plaintiffs' invocation of fraudulent concealment to toll the limitations period similarly fails. "To invoke the fraudulent concealment doctrine, a plaintiff must: (1) plead with particularity the circumstances surrounding the concealment; (2) state facts showing his due diligence in trying to uncover the facts; and (3) allege facts showing affirmative misconduct on the part of defendants." *Scherer v. Balkema*, 840 F.2d 437, 441 n.8 (7th Cir. 1988) (cleaned up). Illinois courts have "declined to apply fraudulent concealment for the running of the statute of limitations where 'the

claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period.'" *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 2024 WL 621601, *26 (N.D. Ill. Feb. 14, 2024) (citation omitted); *accord Chesapeake Ins. Advisors, Inc. v. DeSola*, 2018 WL 565306, *3 (Del. Super. Ct. Jan. 24, 2018) ("Fraudulent concealment tolls a statute of limitation until a plaintiff discovers his rights or could have discovered them by exercise of reasonable diligence."). Plaintiffs' conclusory assertion that they were "ignorant of the information essential to pursue their claims," ACAC ¶ 111, lacks particularity; is belied by their earlier admission that they immediately began seeing ads, *id.* ¶¶ 26, 35; and flouts the ***objective*** standard for inquiry notice.

Plaintiffs likewise fail to "allege facts showing affirmative misconduct on the part of defendants." *Scherer*, 840 F.2d at 441 n.8. Plaintiffs allege in conclusory fashion that Defendants "knowing[ly] and active[ly] conceal[ed]" their conduct, but allege no other facts other than that the tracking pixels themselves were "invisible to the average website visitor." ACAC ¶¶ 108-09. "Concealment by mere silence is not enough." *Resnick v. Schwartz*, 430 F. Supp. 3d 492, 499 (N.D. Ill. 2019) (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)). Plaintiffs cannot plausibly allege concealment absent allegations of affirmative steps by Defendants to conceal their use of tracking pixels. *See Saedi*, 2025 WL 1141168, *11-12 (rejecting plaintiff's argument that use of "invisible" tracking tools constituted an "affirmative misrepresentation" for purposes of invoking the fraudulent concealment doctrine).

## V. DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS

The Court should dismiss Plaintiffs' complaint because there is no basis for general or specific personal jurisdiction over Defendants. Illinois's long-arm statute is coextensive with the

due process requirements of the federal constitution.[12] 735 Ill. Comp. Stat. 5/2-209(c).

### A. Neither Defendant Is "At Home" In Illinois

Plaintiffs acknowledge Defendants are not "at home" in Illinois. MyHeritage (USA) is a Delaware-registered corporation with its principal place of business in Utah, and MyHeritage Ltd. is an Israeli corporation with its principal place of business in Israel. ACAC ¶¶ 36, 37. Defendants have no physical contacts with Illinois: they do not have Illinois employees or offices; they do not own or rent any real property in Illinois; they do not have a registered agent for service of process in Illinois; and they do not maintain any Illinois bank accounts. Japhet Decl. ¶ 7. This precludes any finding of general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

### B. There Is No Basis To Exercise Specific Jurisdiction Over Either Defendant

To establish specific personal jurisdiction, Plaintiffs must demonstrate that: "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [it]self of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (citation omitted). Where, as here, "a defendant has presented evidence supporting a motion to dismiss for lack of personal jurisdiction, a plaintiff opposing such a motion must present evidence of specific facts that support a finding of personal jurisdiction." *Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1016 n.6 (N.D. Ill. 2009).

Plaintiffs cannot satisfy either prong of the specific jurisdiction test for MyHeritage (USA) because none of the alleged misconduct is attributable to MyHeritage (USA). Although Plaintiffs claim MyHeritage (USA) "committed tortious acts in the State of Illinois and this judicial district

---

[12] The Court should find that the 2024 T&C are valid and enforceable. If the Court finds that the 2019 T&C govern, however, then Plaintiffs agreed that personal jurisdiction would exist only in Israel. 2019 T&C at 17 ("You agree that the Service … will not give rise to personal jurisdiction … in jurisdictions other than Israel.").

and Plaintiffs' claims arise out of such acts," ACAC ¶ 40, the alleged misconduct was ***not*** committed by MyHeritage (USA). *See supra* Part § I. Plaintiffs cannot establish that their "alleged injury arises out of" any of MyHeritage (USA)'s "activities," let alone demonstrate a nexus between their injuries and MyHeritage (USA)'s "***forum-related*** activities." *Matlin*, 921 F.3d at 706 (emphasis added).

Specific personal jurisdiction is likewise lacking over MyHeritage Ltd. because it has never "purposefully directed [its] activities at [Illinois] or purposefully availed [it]self of the privilege of conducting business in [Illinois]." *Matlin*, 921 F.3d at 706. Like MyHeritage (USA), MyHeritage Ltd. has no physical contacts with Illinois: it has no Illinois employees or offices; it does not own or rent any real property in Illinois; it has no registered agent for service of process in Illinois; and it has no Illinois bank accounts. Japhet Decl. ¶ 5.

Plaintiffs' allegations that they signed up for accounts on the Website while in Illinois and were injured in Illinois—*i.e.*, that *Plaintiffs* had contact with the forum state—are irrelevant. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) ("It is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state") (citing *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).[13]

Plaintiffs do not and cannot allege MyHeritage Ltd. operates differently in Illinois than it does in other states or countries. Plaintiffs' claims are premised on allegations that "Defendants negligently failed to take reasonable steps to protect Plaintiffs' … Genetic Testing Information from being disclosed," ACAC ¶ 149; "negligently omitted to inform Plaintiffs … that it would use their Genetic Testing Information for marketing," *id.* ¶ 150; and either negligently or intentionally "released" or "disclosed" Plaintiffs' genetic testing information, *id.* ¶¶ 133-34, 136, 139-40, 145.

---

[13] Notably, the billing address for Plaintiff Cater's account with the Website is in Wisconsin, not Illinois. *See* Japhet Decl. ¶ 11.

None of this alleged conduct involves any activity targeted toward Illinois. Plaintiffs do not (because they cannot) allege that the Website specifically targets Illinois consumers with advertising or marketing campaigns. *Compare* Japhet Decl. ¶ 5, *with Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp 3d 582, 589 (N.D. Ill. 2021) (crediting allegations that Ancestry "regularly advertises to Illinois residents" and "promotes its subscription services to Illinois residents at libraries"); *see also GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) ("accept[ing] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff").

Plaintiffs' failure to allege any act or omission in Illinois is fatal to their claims. *See Sean Morrison Ent., LLC v. Thompson*, 2011 WL 6934828, *3 (N.D. Ill. Dec. 28, 2011) (rejecting plaintiff's "impact theory of minimum contacts, which mistakenly assumes that because defendants' alleged tortious conduct would be felt in Illinois, the defendants *must have* acted with an intent to affect an Illinois interest" (emphasis in original)); *see also be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." (emphasis in original)).

## VI. VENUE IS IMPROPER IN THIS DISTRICT

### A. The Court Should Dismiss This Case For Improper Venue Or Transfer It To The District of Delaware Per The Parties' Agreement

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Plaintiffs allege venue is proper because they live in Illinois and were injured here when Defendants allegedly disclosed their genetic information, ACAC ¶¶ 20, 27, and because Defendants allegedly "advertised and sold their DTC genetic testing products to consumers in the State of Illinois and in this judicial district," *id.*

¶ 39. The Japhet Declaration squarely rebuts these allegations because: (1) Defendants do not conduct business or advertise in Illinois, and (2) any decisions regarding the content or function of the Website were made by MyHeritage Ltd. in Israel. Japhet Decl. ¶ 4. Because no substantial part of Plaintiffs' claims occurred in this district, the Court should dismiss this case pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406.

If the Court does not dismiss the case outright, it should transfer the case to the District of Delaware under 28 U.S.C. §§ 1404(a) and 1406 and pursuant to the exclusive Delaware forum selection clause in the 2024 T&C. 2024 T&C at 23. Valid forum selection clauses "should be enforced." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 60 (2013). A plaintiff "bears the burden of establishing that transfer … is unwarranted," and "[b]ecause [the § 1404(a)] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 63-64. The § 1404(a) factors weigh decisively in favor of transfer: (1) the forum clause specifies Delaware, *see Thakkar v. ProctorU Inc.*, 571 F. Supp. 3d 927, 938 (C.D. Ill. 2021) (private interest factors weigh entirely in favor of a preselected forum); (2) federal courts in Delaware are less congested than the Northern District of Illinois, *id.*; *see also* Declaration of Ryan Rakower ("Rakower Decl."), Ex. A; and (3) Plaintiffs admit there is no localized controversy, *Thakkar*, 571 F. Supp. 3d at 938-39; ACAC ¶ 9 (alleging "families around the world use MyHeritage").[14] Courts routinely transfer cases to a federal district court designated in a valid forum selection clause, and the Court should do so here if it does not dismiss altogether. *See, e.g.*, *Thakkar*, 571 F. Supp. 3d at 938-42 (transferring plaintiffs' BIPA

---

[14] That Plaintiffs' claims arise under Illinois law, without further connection to the forum, falls short of an "overwhelming[ ]" showing that the public interest requires that this case be litigated in Illinois. *See Atl. Marine*, 571 U.S. at 67; *Ayyash v. Horizon Freight Sys., Inc.*, 2018 WL 5994755, *7 (N.D. Ill. Nov. 15, 2018) ("[C]ourts routinely apply the law of states other than the state in which they sit.").

action to the Northern District of Alabama); *Schwarz v. Sellers Mkts., Inc.*, 812 F. Supp. 2d 932, 943 (N.D. Ill. 2011) (enforcing forum clause by transferring case); *Kelley v. MailFin. Inc.*, 436 F. Supp. 3d 1136, 1144 (N.D. Ill. 2020) (same).

**B. If The 2024 T&C Do Not Apply, The Israeli Forum Selection Clause In The 2019 T&C Requires Dismissal For Forum Non Conveniens**

Should the Court find the 2024 T&C do not bind Plaintiffs, the 2019 T&C remain in effect and contain a mandatory Tel Aviv, Israel forum selection clause. 2019 T&C at 17. "[T]he appropriate way to enforce a forum-selection clause pointing to a … foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine*, 571 U.S. at 60. Plaintiffs again bear "the burden of showing that public-interest factors overwhelmingly disfavor dismissal." *Pomerantz v. Int'l Hotel Co.*, 359 F. Supp. 3d 570, 580 (N.D. Ill. 2019) (internal citation omitted). As before, *see supra* Part § V(A), Plaintiffs cannot meet this burden. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (§ 1404(a) and forum non conveniens analyses are "the same"). For starters, the "need to apply foreign law point[s] towards dismissal." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Hldgs, Inc.*, 29 F.4th 351, 361 (7th Cir. 2022) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981)); 2019 T&C at 14 ("This Agreement and any dispute regarding the Service shall be exclusively governed by the laws of the State of Israel[.]"). Beyond that, (1) the forum selection clause specifies Israel; (2) Israeli courts are no more congested than those in this district, *Pomerantz*, 359 F. Supp. 3d at 581; Rakower Decl. Ex. B; (3) there is no localized controversy, *Pomerantz*, 359 F. Supp. 3d at 581; and (4) Israel has a strong interest given that the Website's operator, MyHeritage Ltd., is located there. If the 2024 T&C do not bind Plaintiffs, the Court should enforce the 2019 T&C's forum selection clause and dismiss for forum non conveniens. *See Pomerantz*, 359 F. Supp. 3d at 581-82; *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 444 (7th Cir. 2012).

## CONCLUSION

For the above reasons, and because the ACAC is Plaintiffs' third complaint, the ACAC should be dismissed with prejudice.

Respectfully submitted,

DATED: August 20, 2025

*/s/ Christina E. Sharkey*

Christina E. Sharkey (6316735)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
christinasharkey@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7474

Robert S. Loigman (*pro hac vice*)
Stephen Broome (*pro hac vice*)
Ryan A. Rakower (*pro hac vice*)
Caitlin E. Jokubaitis (*pro hac vice*)
robertloigman@quinnemanuel.com
stephenbroome@quinnemanuel.com
ryanrakower@quinnemanuel.com
caitlinjokubaitis@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000

*Attorneys for Defendants*
*MyHeritage (USA) Inc. and MyHeritage Ltd.*

## CERTIFICATE OF SERVICE

I certify that on August 20, 2025 a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court of the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all counsel of record at the email addresses that they have provided to the Court.

*/s/ Christina E. Sharkey*
Christina E. Sharkey