**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KAREN CARTER** and **ARTHUR PODROYKIN** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**MYHERITAGE (USA), INC.** and **MYHERITAGE LTD CORPORATION**,<br><br>Defendants, | Case No. 1:25-cv-00224<br><br>Judge Joan H. Lefkow |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............ 1

FACTUAL ALLEGATIONS ............ **Error! Bookmark not defined.**

LEGAL STANDARD ............ 3

ARGUMENT ............ 4

I. PLAINTIFFS' ALLEGATIONS SATISFY THE RULE 8 PLEADING STANDARD AS TO BOTH PLAINTIFFS ............ 4

II. PLAINTIFFS' ALLEGATIONS ESTABLISH THAT THEIR INJURY IS FAIRLY TRACEABLE TO MYHERITAGE (USA). ............ 5

III. THE ARBITRATION CLAUSE IS NOT ENFORCEABLE AGAINST PLAINTIFFS WHO HAD NO NOTICE OF THE CHANGE IN MATERIAL TERMS ............ 8

IV. PLAINTIFFS' CLAIMS WERE TOLLED BY DEFENDANTS' SURREPTITIOUS INSTALLATION OF TRACKING TOOLS. ............ 11

V. DEFENDANTS PURPOSEFULLY CONDUCTED BUSINESS AND CAUSED PLAINTIFFS' INJURIES IN ILLINOIS GIVING THIS COURT PERSONAL JURISDICTION. ............ 13

a. Defendants purposefully directed their activities towards the state of Illinois. ..... 14

b. Plaintiff's claims arise out of Defendants' contacts with the state of Illinois. ............ 15

VI. ISRAEL IS NOT A PROPER VENUE FOR THIS ACTION. ............ 17

CONCLUSION ............ 20

# TABLE OF AUTHORITIES

## Cases

*A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)......... 13

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) ........ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 4

*B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024)........ 13

*Bank of America, N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013)........ 5

*be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011)........ 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007)........ 4

*Bennett v. Spear*, 520 U.S. 154 (1997) ........ 6

*Brown v. Google, LLC*, 525 F.Supp.3d 1049 (N.D. Cal. 2021)........ 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)........ 14

*Cabrera v. Sas*, 777 F. Supp. 3d 900 (N.D. Ill. 2025) ........ 20

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) ........ 3

*Cerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008) ........ 18

*Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757 (7th Cir. 2008) ........ 14

*Curry v. Revolution Labs, LLC*, 949 F.3d 385 (7th Cir. 2020)........ 15, 16

*Deb v. Sirva, Inc.*, 832 F.3d 800 (7th Cir. 2016) ........ 17

*Doe v. Fullstory, Inc.*, 712 F.Supp.3d 1244 (N.D. Cal. 2024)........ 13

*Evers v. Astrue*, 536 F.3d 651 (7th Cir. 2008)........ 6

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021) ........ 16

*Friends for Health: Supporting the N. Shore Health Ctr. v. Paypal, Inc.*, No. 17 CV 1542, 2018 U.S. Dist. LEXIS 98187 (N.D. Ill. June 12, 2018) ........ 9

*Gorgas v. Amazon.com, Inc.*, 2023 U.S. Dist. LEXIS 109556, No. 22 CV 5159 (N.D. Ill. June 23, 2023) ........ 4

*Harris v. W6LS, Inc.*, 2024 U.S. Dist. LEXIS 91687 (N.D. Ill. May 22, 2024). .......................... 19

*Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329 (7th Cir. 2018) .............................. 3

*Horton v. City of Rockford*, No. 18 C 68, 2019 U.S. Dist. LEXIS 131253 (N.D. Ill. Aug. 6, 2019) .................................................................................................................. 4

*Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010)). ...................................................... 15

*Lax v. Mayorkas*, 20 F.4th 1178 (7th Cir. 2021)........................................................... 3, 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014) .......................... 5, 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 6

*Matlin v. Spin* Master Corp., 921 F.3d 701 (7th Cir. 2019). ...................................................... 16

*Maturo v. CF Eagle Brook Arcis, LLC*, 2025 IL App (2d) 240577-U (Ill. App. 2d Feb. 24, 2025) .................................................................................................................. 9

*NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) ...................................................... 14, 15

*Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 U.S. Dist. LEXIS 153248 (N.D. Ill. Aug. 8, 2025) ........................................................................................................ 12, 14

*Orawin Technology, LLC v. Healthcare Delivered, LLC*, N.D.Ill. No. 16 C 19, 2017 U.S. Dist. LEXIS 151315, at *15-16 (Sep. 18, 2017) ................................................................... 11

*Qin v. Deslongchamps*, 31 F.4th 576 (7th Cir. 2022)................................................................. 8

*Richter v. Instar Enters. Int'l, Inc*., 594 F. Supp. 2d 1000 (N.D. Ill. 2009)................................ 17

*Robles v. City of Chicago*, 354 F. Supp. 3d 873 (N.D. Ill. 2019))................................................ 4

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025) ............................................................................................................ 13

*Sean Morrison Entm't, LLC v. Thompson*, 2011 U.S. Dist. LEXIS 150026 (N.D. Ill. Dec. 28, 2011) ...................................................................................................................... 17

*Sgouos v. TransUnion Corp*., 817 F.3d 1029 (7th Cir. 2016 ....................................................... 8

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015)......................................................................... 6

*Sloan v. Anker Innovations Ltd.*, 711 F.Supp.3d 946 (N.D. Ill. 2024) ........................................... 4

*Stroll v. Epstein,* 818 F.Supp. 640 (S.D.N.Y.1993)................................................................... 11

*Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814 (N.D. Ill. 2021) ................................ 12

*Woodard v. Quote Storm Holdings, LLC*, 2023 U.S. Dist. LEXIS 90743 (N.D. Ill. May 24, 2023) ..... 8

*Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20 CV 3200, 2020 U.S. Dist. LEXIS 239230 (N.D. Ill. Dec. 21, 2020) ..... 4

*Zuniga v. Major Leage Baseball*, 2021 IL App (1st) 201264 (Ill. App. 1st Mar. 16, 2025) ..... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ..... 3

Fed. R. Civ. P. 8(a) ..... 4

## PRELIMINARY STATEMENT

Defendants MyHeritage (USA), Inc. ("MyHeritage USA") and MyHeritage Ltd Corporation ("MyHeritage Ltd." and, together with MyHeritage USA, "MyHeritage" or "Defendants") work together to market their direct-to-consumer genetic testing kits to consumers in the United States, including to citizens of Illinois, and then require those consumers to use Defendants' website, www.myheritage.com (the "Website") to receive their genetic testing results. However, unbeknownst to Plaintiffs Karen Cater[1] and Arthur Podroykin (collectively, "Plaintiffs") and the putative Class Members, Defendants installed and configured Google's surveillance software on the Website (the "Tracking Tools"), including 'tracking pixels' ("Pixels") and third-party 'cookies', to capture sensitive, personally identifiable information and then disclose it to third parties, including Alphabet, Inc. ("Google"). This sensitive information includes the fact that their customers have been subject to genetic testing, as well as the results of that genetic testing (collectively, "Genetic Testing Information"). What is more, Defendants disclose such sensitive information without the customers' knowledge or consent. Defendants' disclosures violate the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et. seq* ("GIPA"), as alleged in the Amended Consolidated Complaint [ECF No. 35].

In their Motion to Compel Arbitration and Dismiss the Amended Consolidated Complaint [ECF No. 40] (the "Motion" or "Mot."), Defendants do ***not*** deny collecting and transmitting Plaintiffs' Genetic Testing Information through their use of surreptitious online tracking tools. Nor do Defendants dispute that this conduct violates GIPA. Rather, Defendants make a number of

[1] Plaintiff Cater is identified in the Consolidated Complaint by the surname Carter. *See* ECF No. 35. Such identification was a scrivener's error that Plaintiffs intend to correct. Nevertheless, Defendants are aware of Plaintiff Cater's identity and have sufficient notice of her claims against them.

unavailing jurisdictional arguments in an attempt to escape liability for their illegal disclosure of sesative Genetic Testing Information. .

These jurisdictional arguments must fail. Defendants concede that Plaintiffs resided in Illinois and were injured in Illinois by their unlawful disclosures. Thus, Defendants are inarguably subject to this Court's jurisdiction as they deliberately targeted their business activities in the state of Illinois by maintaining a commercial website from which Illinois citizens could order goods from, and have them shipped to, Illinois. Indeed, Defendants knowingly shipped the genetic testing kits to Illinois residents at their Illinois addresses. Defendants also created privacy policies specific to the state of Illinois. Moreover, Plaintiffs' claims arise out of Defendants' conduct in Illinois as Plaintiffs were injured in Illinois when their Genetic Testing Information was intercepted in Illinois by the Tracking Tools and unlawfully disclosed in violation of GIPA, an Illinois state statute.

Defendants' attempt to bind Plaintiffs to the arbitration clause and forum selection clause that they recently added to their Website Terms and Conditions[2] is equally unavailing. Defendants' unilaterally inserted the arbitration clause only in June 2024. Conversely, the terms and agreements to which Plaintiffs agreed to when they created their accounts (in April 2020 for Plaintiff Podroykin, and in October 2021 for Plaintiff Cater), which had been in place since 2019[3], did not contain an arbitration clause.

Although the 2019 T&C permitted Defendants to unilaterally modify the agreement, Defendants failed to notify Plaintiffs or the Class Members about the added arbitration provision. The 2024 T&C promised to "inform [customers] by email within 10 days of the Effective Date" so that Plaintiffs and Class Members had the opportunity to opt-out of the arbitration provision within 30 days of its enactment on June 23, 2024. However, Defendants never sent Plaintiffs the

---

[2] *See* ECF No. 40, Exhibit C (the "2024 T&C").
[3] *See* ECF No. 40, Exhibit B (the "2019 T&C").

required notice email and neither Plaintiff would have seen the purported banner notice on the Website because neither used the Website during the limited 30-day opt-out period. Defendants, having violated their own notice provision, cannot now compel Plaintiffs to adhere to an arbitration clause to which Plaintiffs had no notice and did not consent.[4] Further, Defendants' argument that Plaintiffs, both Illinois residents, should be forced to litigate this matter **in Israel**, under Israeli law, is equally unavailing. For numerous reasons detailed below, Plaintiffs cannot be forced to abandon their statutory rights under Illinois' extensive genetic privacy law. Defendant's other arguments fair no better. Plaintiffs' allegations satisfy the Rule 8 pleading standard as to provide both Defendants with adequate notice of Plaintiffs' claims. Moreover, Plaintiffs' allegations are sufficient to establish that their injuries are traceable to both Defendants as to provide for Article III standing as to MyHeritage USA. Finally, Plaintiffs' claims are timely as the surreptitious nature of Defendants' use of the Tracking Tools made discovery of Plaintiffs' claims impossible such that delayed discovery rule tolled Plaintiffs' claims.

For these reasons, as more fully explained below, Defendants' Motion should be dismissed.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised "a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (*citing Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Courts must deny a motion to dismiss if the complaint "state[s] a claim

[4] For the same reasons, the Delaware forum selection clause included in the 2024 T&C is also inapplicable.

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555-56 (2007).

## ARGUMENT

### I. PLAINTIFFS' ALLEGATIONS SATISFY THE RULE 8 PLEADING STANDARD AS TO BOTH PLAINTIFFS.

Under Rule 8, Plaintiffs need only provide a "short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a). Defendants move to dismiss the Amended Complaint in its entirety because, they assert, the Plaintiffs engage in group pleading. *See* Mot. At 5. However, there "is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively." *Sloan v. Anker Innovations Ltd.*, 711 F.Supp.3d 946, 955 (N.D. Ill. 2024) (quoting *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019)). Group pleading does not violate Rule 8 "so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Horton v. City of Rockford*, No. 18 C 68, 2019 U.S. Dist. LEXIS 131253, at *3 (N.D. Ill. Aug. 6, 2019) (citations omitted). A complaint that directs every allegation at all the defendants can provide sufficient detail to put the defendants on notice because the defendants "do not have to speculate about which claims or allegations pertain to them; they must defend against them all." *Gorgas v. Amazon.com, Inc.*, 2023 U.S. Dist. LEXIS 109556, No. 22 CV 5159, at *3 (N.D. Ill. June 23, 2023). Here, Defendants "do not have to speculate about which claims or allegations pertain to them" because Plaintiffs have asserted all claims against both Defendants, so the allegations do not violate Rule 8. *Id.*

Plaintiffs, with the assertion of facts common to all Counts and the use of specific subheadings, provided detail far exceeding what is required under Rule 8(a)(2). *See Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20 CV 3200, 2020 U.S. Dist. LEXIS 239230, at *3 (N.D. Ill. Dec. 21, 2020) (finding, in a case arising under the Illinois Biometric Information Act, that the

plaintiff alleged enough to put each defendant on notice of their alleged wrongdoing where "she plan[ned] to prove that both defendants violated BIPA, even though she [wa]s currently unable to allege which one in particular installed and controlled the timekeeping system").

Defendants cite to *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) to support their position. *See* Mot. at 5. But the instant matter is far different from *Knight* because here, Defendants did not receive insufficient notice as the court found in the *Knight* case. In *Knight*, the relevant allegations were that "'the defendants looted the corporation'—without any details about who did what." 725 F.3d at 818. But, in *Knight* the details of the alleged looting were highly complex, and as such plaintiff's failure to indicate which defendants engaged in which acts was problematic to parsing the relevant claims. *Id.* at 819. In contrast, here, Plaintiffs allege that both Defendants engaged in the common scheme to disclose Plaintiffs' and Class Members' Genetic Testing Information to third parties through the Tracking Tools without consent. *See e.g.* ¶¶ 6, 13, 20-35, 83-89. Furthermore, to the extent there was any differentiation between Defendants' actions, even assuming such differences could be legally relevant, the operative facts are all within Defendants' control. Presumably they know which of them did what with regard to the tracking tools, and as such their supposed need for Plaintiffs' to provide such identification is nothing more than an attempt to use procedural rules to avoid substantive legal obligations.

## II. PLAINTIFFS' ALLEGATIONS ESTABLISH THAT THEIR INJURY IS FAIRLY TRACEABLE TO MYHERITAGE (USA).

Article III, from which the standing requirement is derived, "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). The alleged constitutional violation need not be "the very last step in the chain of causation. While...it does not suffice if the injury complained of is 'the result of the independent action of some third party not before the court,' that does not

exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 159, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)) (emphasis in original and alterations omitted). Causation in the standing context does not mean "[p]roximate causation." *Lexmark Int'l, Inc.*, 572 U.S. at 134 n.6. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Indeed, courts presume that "general allegations embrace those specific facts that are necessary to support the claim." *Id.* A plaintiff's allegations need only to "plausibly suggest" each element of standing, with the court drawing all reasonable inferences in the plaintiff's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). Additionally, where, like here, the relevant facts are disputed, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether [ ] subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (cleaned up). *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (cleaned up).

Defendants rely solely on the self-serving Japhet Decl., which states that the Website is maintained by MyHeritage Ltd. and not MyHeritage (USA)which, the declaration claims, maintains a different website, Geni.com. *Id*. This stands in contrast to the other facts that call into question the conclusive statements contained in the Japhet Decl. MyHeritage (USA), Inc. is headquartered at 3098 Executive Parkway, Suite 275, Lehi, UT 84043.[5] But, in a blog post on the Website, Defendants state that they also have two offices in the US; one in Lehi, Utah, and ***another in Burbank, California, home of our Geni team***." (emphasis added).[6] In other words, by

[5] *See Business Search* [Search Term: "MyHeritage (USA), Inc."], UTAH SECRETARY OF SEARCH, www.businessregistration.utah.gov/EntitySearch/BusinessInformation.

[6] *See A Sneak Peek Inside the MyHeritage HQ*, MYHERITAGE.COM BLOG,

Defendants' own admission, the Geni team is based in Burbank, not at MyHeritage (USA), Inc.'s headquarters in Lehi, Utah. Likewise, on the Geni.com website, the contact address provided is: Customer Support, Geni.com, 2080 Empire Avenue #1233, Burbank, CA 91504 USA.[7] But in the e-mails sent by Defendants to Website users, the address included in the e-mail footer is instead MyHeritage (USA)'s address in Lehi, UT. Additionally, the registered agent in Utah for MyHeritage Ltd.—where both MyHeritage Ltd. and MyHeritage USA are registered—is MyHeritage (USA) at MyHeritage (USA)'s address.

In short, while Defendants claim that MyHeritage (USA) operates only Geni.com and has nothing to do with the Website, their own public statements directly contradict this conclusion. Wherever Defendants provide an American address for Geni.com, it is in Burbank, CA, not MyHeritage (USA)'s headquarters in Lehi, UT. But, where Defendants provide an American address for the MyHeritage Website, that address is always MyHeritage (USA)'s headquarters. The Court cannot assume the truth of Defendants' unsupported, self-serving statements in the Japhet Decl. when all other evidence points to the contrary.

While Plaintiffs maintain that the allegations and the evidence are sufficient to find that their injuries are indeed traceable to MyHeritage USA, where, as here, the evidence offered by the parties is inconclusive as to subject-matter jurisdiction, a district court should permit limited jurisdictional discovery. *See Woodard v. Quote Storm Holdings, LLC*, 2023 U.S. Dist. LEXIS 90743, at *3 (N.D. Ill. May 24, 2023) ("Courts sometimes authorize [jurisdictional] discovery after suit is filed when doubt emerges regarding whether, as alleged, the parties are in fact diverse).

---

www.blog.myheritage.com/2016/01/a-sneak-peek-inside-the-myheritage-hq/.; *see also MyHeritage becomes the first genealogy company…*, MYHERITAGE LINKEDIN PAGE, www.linkedin.com/pulse/myheritage-becomes-first-genealogy-company-publish-entire-1950-/ (providing locations as Tel Avivi and Lehi, UT in article describing new feature on the Website).

[7] *See Contact*, GENI.COM, www.geni.com/privacy#contact.

Defendants hold all relevant facts regarding control of the Website. Thus, to uncover the truth Plaintiffs must be permitted to examine the evidence.

## III. THE ARBITRATION CLAUSE IS NOT ENFORCEABLE AGAINST PLAINTIFFS WHO HAD NO NOTICE OF THE CHANGE IN MATERIAL TERMS.

Defendants argue that Plaintiffs are subject to an arbitration clause unilaterally added to its Terms of Service in June of 2024, years after Plaintiffs first visited and created their accounts on the Website. But Defendants ignore the crucial fact that, although a plaintiff may generally consent to a unilateral modification of a terms of service agreement through continued use, such consent cannot be found where the website operator fails to abide by the notice provision included in the relevant terms. Defendants failed provide the notice the 2024 T&C explicitly required and thus, Plaintiffs cannot be found to have consented to the arbitration provision that was unilaterally added without adherence to the required notice provision.

The question of whether parties to a dispute have contractually agreed to submit that dispute to arbitration is determined according to principles of state contract law. *Zuniga v. Major Leage Baseball*, 2021 IL App (1st) 201264 (Ill. App. 1st Mar. 16, 2025), ¶ 14 (citing *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229. 234); *see also Miracle-Pond v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 8608, at *3 (N.D. Ill. May 15, 2020) ("Whether an agreement to arbitrate has been formed is governed by state law.") (citing *Sgouos v. TransUnion Corp*., 817 F.3d 1029, 1034 (7th Cir. 2016)). In *Maturo v. CF Eagle Brook Arcis, LLC*, the Illinois 2nd District Court of Appeals examined a situation wherein a country club's Rules and Regulations explicitly stated that "notice of any amendments [to the Rules and Regulations must] be made by publication in the Club's newsletter or by posting at the Club." 2025 IL App (2d) 240577-U (Ill. App. 2d Feb. 24, 2025), ¶ 23. When the Club later amended its Rules and Regulations to include an arbitration clause, although it posted the updated Rules and Regulations on its website, it failed to provide notice by

publication in the Club's newsletter as specifically promised in the Rules and Regulations amendment provision. *Id*. The court therefore held that although generally, "notice of amended contracts by publishing them on a website provides sufficient notice under Illinois law," the arbitration clause still could not bind plaintiffs because the Club had failed to abide by its own express notice procedure. *Id* ¶ 24.[8]

Defendants here have made the same error. Defendants' 2024 T&C promises Website users that "MyHeritage will attempt to inform you by email within 10 days of the Arbitration Effective Date about the changes in this Agreement that include the arbitration provision[,] and that "[s]hould the changes to this arbitration provision be material, MyHeritage will provide you notice and an opportunity to opt-out." 2024 T&C, at 26, 28. But, Plaintiffs did not receive any notice of the updated arbitration clause. Plaintiffs did not receive, and Defendants do not claim to have even attempted to send, an email informing them of the addition of the arbitration clause. *See* Cater Decl. ¶¶ 2-3; *see generally* Japhet Decl. Moreover, while Defendants claim to have provided notice in the form of an "updated" banner on the website, the Terms and Conditions themselves provide that Defendants only allowed consumers to opt-out of the arbitration provision within 30 days of implementing the provision, and only displayed the banner for thirty days. 2024 T&C, at 22. By Defendants' own admission, Plaintiffs did not access the Website within 30 days of June 23, 2024, so they would never have seen this purported banner. *See* Japhet Decl, ¶ 20; *see also* Cater Decl. ¶ 4.

Moreover, to the extent that Defendants argue that the e-mail notice provision was not active with regards to the 2024 T&C, their argument must fail. The notice provision in the 2024

---

[8] *See also Friends for Health: Supporting the N. Shore Health Ctr. v. Paypal, Inc.*, No. 17 CV 1542, 2018 U.S. Dist. LEXIS 98187, at *15 (N.D. Ill. June 12, 2018) (holding that a plaintiff's sworn statement that she did not receive an e-mail from defendant could create an inference that the email was never sent where uncontradicted by the defendant).

T&C specifies that notice will be provided ten days after June 23, 2024 (the date the 2024 T&C was published on the Website, also referred to as the "Arbitration Effective Date" by the 2024 T&C). 2024 T&C, at 1, 27. Therefore, under the 2024 T&C that Defendants claim to be controlling, Defendants were required to provide notice to Plaintiffs of the newly added arbitration clause within ten days of its enactment. *Id*.

Defendants rely on *Miracle-Pond v. Shutterfly, Inc.* to argue that their unilateral addition of the arbitration clause was not illusory. *See* Mot. at 8. But the court in *Maturo* distinguished the holding in *Miracle-Pond* from circumstances where, like here, modification of the relevant agreement required notice to be provided in a way that the party seeking to compel arbitration failed to satisfy. *See Maturo*, 2025 IL App (2d) 240577-U, ¶ 28 (finding *Miracle-Pond* distinguishable because "the key in *Miracle-Pond* was that the change-in-terms provision at issue allowed for unilateral change without notice (other than posting the modified terms on their website, which they did)…[but] here, the modification clause that was in effect when [the defendant] attempted to add the arbitration clause required notice, in one of two forms, which they did not comply with.") As in *Maturo*, *Miracle-Pond* is inapplicable to this action because unlike the *Miracle-Pond* defendant (and like the Club in *Maturo*), Defendants failed to provide the notice required under its own T&C when it enacted the relevant arbitration clause. *See* 2024 T&C, at 26.

Further, although the 2019 T&C allows for modifications, it only permits Defendants "to modify any provision hereof." 2019 T&C, at 1. Breaking down this clause into its parts, the term "modify means 'to change somewhat the form or qualities of; alter partially; amend.' Modifications are changes short of a complete overhaul[.]" *Orawin Technology, LLC v. Healthcare Delivered, LLC*, N.D.Ill. No. 16 C 19, 2017 U.S. Dist. LEXIS 151315, at *15-16 (Sep. 18, 2017) (citations omitted). The phrase "hereof" means "of this" or "of this thing." Black's Law

Dictionary 795 (11th Ed. 2019); *see also Stroll v. Epstein,* 818 F.Supp. 640, 645 (S.D.N.Y.1993) ("the definition of 'hereof' is 'of this' (i.e. of this agreement)") (citation omitted). The word "provision" means "a clause in a statute, contract, or other legal instrument." Black's Law Dictionary (11th ed. 2019). As the 2019 T&C did not include an arbitration provision, Defendants' addition of an arbitration clause was not a "change somewhat" of the form or qualities of a "provision hereof" in the 2019 T&C but rather, the addition of a brand-new provision that did not previously exist. *Compare* 2019 T&C, *with* 2024 T&C. Under the language of the 2019 T&C—which Defendants themselves drafted—such a modification was not permissible. Plaintiffs agreed only that existing provisions may be unilaterally modified by Defendants, ***not*** that Defendants could add brand-new provisions that fundamentally altered the parties' ability to enforce the contract. Accordingly, Defendants' motion to compel Plaintiffs into arbitration must be denied, as Defendants failed to provide required notice under 2024 T&C, and impermissibly added a provision under the terms of the 2019 T&C.. [9]

## IV. PLAINTIFFS' CLAIMS WERE TOLLED BY DEFENDANTS' SURREPTITIOUS INSTALLATION OF TRACKING TOOLS.

Plaintiffs allege that they could not have reasonably discovered their claims or had any reason to suspect them prior to just before filing this action. Thus their claims are not time-barred pursuant to both the discovery rule and fraudulent concealment doctrine. *See* ¶¶ 117-124.

***First***, Plaintiffs' claims were tolled due to the delayed discovery rule. To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 839 (N.D. Ill. 2021). Here, Plaintiffs plead the time and manner in

[9] For these same reasons, Defendants' arguments as to the delegation of the question of arbitrability and the Delaware choice of law provision also fails, as 'these provisions were included in the arbitration clause that Plaintiffs cannot be deemed to have consented to, as explained in this section.

which they discovered their claims sufficient to establish that the delayed discovery rule applies, by alleging that they could not have known about Defendants' conduct until they contacted the undersigned counsel in 2024. Courts analyzing the delayed discovery rule in the context of online Tracking Tools have concluded that allegations that a defendant has secretly installed and prevented the discovery of Tracking Tools on its website are sufficient to toll the statute of limitations at the pleading stage. *See, e.g.*, *Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 U.S. Dist. LEXIS 153248, at *8 (N.D. Ill. Aug. 8, 2025) (declining to dismiss matter based on statute of limitations where plaintiffs alleged "that the hidden nature of tracking technologies prevented their earlier discovery"). Like in these cases, Plaintiffs here have alleged that the technological complexity and secrecy of Defendants' Tracking Tools prevented them from discovering the Defendant's disclosure of their Genetic Testing Information.[10]

Defendants further contend that Plaintiffs were put on notice regarding the dissemination of their Genetic Testing Information because they began to see targeted ads after using the Website. *See* Mot. at 14. However, being targeted with ads does not mean that Plaintiffs were aware of *how*, *to what extent*, or even *which website* was responsible for disseminating their Genetic Testing Information to third parties. Indeed, Defendants admit that Plaintiff Cater procured genetic testing services from other third-party companies, not just from their Website. *See* Japhet Decl. ¶ 10. Moreover, Defendants cite only one out-of-circuit case to support this argument, *Saedi v. SPD Swiss Precision Diagnostics GmbH*. *See* MTD at 11 (citing 2025 U.S. Dist. LEXIS 83660, *10

[10] *See, e.g.*, ¶ 113 ("Under the circumstances, Defendant was under a duty to disclose the nature, significance, and consequences of its collection and treatment of its customers' Genetic Testing Information. In fact, to the present Defendant has not conceded, acknowledged, or otherwise indicated to its customers that it has disclosed or released their Genetic Testing Information to unauthorized third parties"); ¶¶ 3, 109 (alleging Defendants' use of Tracking Tools was "surreptitious" and the Tracking Tools are "invisible to the average website visitor").

(C.D. Cal. Feb. 27, 2025)). Even assuming that the applicable law underpinning *Saedi* is applicable to this action, the vast majority of courts applying the same Ninth Circuit law under similar circumstances disagree with the *Saedi* court's conclusion.[11]

***Second***, where plaintiffs allege, like here, that a defendant has intentionally hidden and misrepresented their website's practices, their claims are tolled. *See, e.g.*, *Brown v. Google, LLC*, 525 F.Supp.3d 1049, 1071 (N.D. Cal. 2021) (tolling claims where defendant's tracking methods were not apparent to users and its privacy policy failed to disclose the full scope of tracking). Here, Plaintiffs allege that Defendants' Privacy Policy promises that Defendants will never sell or license genetic data or personal data in contravention of their actual practices. ¶¶ 90-95. These allegations are sufficient to show Defendants' efforts to obscure their use of the Tracking Tools to disclose Plaintiffs' Genetic Testing Information to third parties, like Google.

Because Defendants concealed their tracking efforts and Plaintiffs could not have reasonably discovered their causes of action, Plaintiffs' Complaint is not time-barred. *See Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 U.S. Dist. LEXIS 153248, at *8 (N.D. Ill. Aug. 8, 2025).

## V. DEFENDANTS PURPOSEFULLY CONDUCTED BUSINESS AND CAUSED PLAINTIFFS' INJURIES IN ILLINOIS GIVING THIS COURT PERSONAL JURISDICTION.

In the Seventh Circuit, specific personal jurisdiction exists where the plaintiff shows that: (1) the defendant's contacts with the forum state show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; (2) the plaintiff's alleged injury arose out of the defendant's forum-related activities; and (3)

---

[11] *See, e.g., B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *5 (C.D. Cal. Feb. 1, 2024) (holding that delayed discovery rule tolled statute of limitations where defendant surreptitiously installed identical tracking technologies); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480 , at *1 (N.D. Cal. Oct. 25, 2024) (holding that delayed discovery rule tolled statute of limitations where defendant installed identical tracking technologies); *Doe v. Fullstory, Inc.*, 712 F.Supp.3d 1244, 1255-56 (N.D. Cal. 2024) (same).

the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *NBA Props. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022). Ultimately, "the 'defendant's conduct and connection with the forum State' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

**a. Defendants purposefully directed their activities towards the state of Illinois.**

The Seventh Circuit has found that specific personal jurisdiction exists over an out-of-state website operator on several occasions where the defendant has knowingly done business with Illinois residents. For example, in *Illinois v. Hemi Group LLC*, the Seventh Circuit found that online cigarette "sales to the plaintiff's agents supported a finding of personal jurisdiction because the retailer both maintained commercial websites from which one could order goods to Illinois and because it then 'knowingly did do business with Illinois residents.'" *NBA Props.*, 46 F.4th at 624 (quoting 622 F.3d 754, 757-8 (7th Cir. 2010)). Likewise, in *Curry v. Revolution Labs, LLC*, the Seventh Circuit found that:

> the defendant's actions could be fairly 'described as purposeful[ly]' directed where it 'created an interactive website and explicitly provided that Illinois residents could purchase its products through that website,' 'arranged for the sale of its products through third-party websites,' 'sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois shipping address,' and then, 'shipped [the product] to its customers who were in Illinois.'

*Id*. (quoting *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 399 (7th Cir. 2020)); *see also Howell v. Bumble, Inc.*, No. 21 CV 6898, 2023 U.S. Dist. LEXIS 166243, at *29 (N.D. Ill. Sep. 19, 2023) ("it is foreseeable that, if routine use of the [defendant's] app injures an Illinois user like [plaintiff], [defendant] might be haled into court in Illinois"). Here, like in *Curry*, Plaintiffs allege that Defendants marketed their test kits to Illinois residents through the Website, processed purchase orders made by Illinois customers, and shipped their test kits to the Illinois addresses of those

Illinois customers. ¶¶ 20-43. Moreover, Defendants specifically target their products to Illinois residents by tailoring the products they make available to individuals in Illinois. For example, while Defendants offer the "Photo Tagger" feature in 46 United States, they do not offer it (but offer all of their other products) to Illinois customers, presumably to insulate themselves from liability under the Illinois Biometric Privacy Act ("BIPA"), 740 Ill. Comp. Stat. Ann. 14/1, *et seq*.[12] Where a company modifies its product availability based on the specific state of the purchaser, it is deemed to have targeted the states in which its products are offered. *See Hemi Grp.,* 622 F.3d at 758 ("the fact that [defendant] excluded New York residents from its customer pool shows both that [defendant] knew that conducting business with residents of a particular state could subject it to jurisdiction there and also that it knew how to protect itself from being haled into court in any particular state").

As Plaintiffs allege that Defendants knowingly marketed, sold and shipped their products to Illinois customers in Illinois—and, moreover, that Defendants modified their product offerings with regards to Illinois customers specifically—they have established that Defendants purposely availed themselves of this forum.

**b. Plaintiff's claims arise out of Defendants' contacts with the state of Illinois.**

"The proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be 'suit-related.'" *Curry*, 949 F.3d at 400 (*quoting Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). The "most common formulation" of this requirement "demands that the suit 'arise out of or relate to the

[12] *See US State Privacy Notice*, MYHERITAGE.COM, *available online at*: www.myheritage.com/us-state-privacy-notice ("The Photo Tagger feature identifies faces in your photos and creates facial recognition models (i.e., biometric information) of you and your deceased relatives…we do not offer Photo Tagger in California, Illinois, Texas, and Washington and do not, therefore, collect biometric information in those states.").

defendant's contacts with the forum.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1021 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1786 (2017)). Here, Plaintiffs' claims clearly arise out of Defendant's contacts with the forum. Plaintiffs allege that they were injured by Defendant's surreptitious disclosure of the genetic testing results derived from the DTC testing kits that Defendants marketed, sold and shipped into the state of Illinois. Cases cited by Defendants do not compel a different result. ***First,*** in *Matlin v. Spin Master Corp*, the Seventh Circuit distinguished the plaintiffs' allegations from *Hemi* on three grounds: (1) the defendant only made a single sale in the state of Illinois; (2) the plaintiffs' claims did not stem from an injury caused by the product sold in Illinois; and (3) the single Illinois sale occurred *after* plaintiffs filed their case. 921 F.3d 701, 706-07 (7th Cir. 2019). None of these factors are relevant here. Rather, Plaintiffs allege that Defendants have sold thousands of test kits to Illinois residents, that their injuries arise from the use of those test kits, and that Plaintiffs (as well as the thousands of similarly situated Class Members) purchased their test kits prior to the filing of the instant action. *See* ¶¶ 20-43. ***Second***, unlike in *be2 LLC v. Ivanov*, Plaintiffs do not allege that Defendants merely "operat[ed] an interactive website that is accessible from the forum state[.]" 642 F.3d 555, 559 (7th Cir. 2011). Rather, Plaintiffs allege that Defendants marketed and sold their DTC test kits to Illinois residents, and then shipped those test kits to their Illinois customers' Illinois addresses. In other words, Plaintiffs allege the exact same contacts that were found sufficient to establish personal jurisdiction by the Seventh Circuit in *Curry*. *See* 949 F.3d at 399.[13]

[13] Other cases cited by Defendant are even more inapposite. In *Richter v. Instar Enters. Int'l, Inc.*, the defendant did not even know that its products were being sold in Illinois. 594 F. Supp. 2d 1000, 1016-17 (N.D. Ill. 2009). And, in *Sean Morrison Entm't, LLC v. Thompson*, the only Illinois connection alleged by the plaintiff was the defendants' retention of an Illinois attorney. No. 11 C 2462, 2011 U.S. Dist. LEXIS 150026, at *16 (N.D. Ill. Dec. 28, 2011).

## VI. ISRAEL IS NOT A PROPER VENUE FOR THIS ACTION.

As Defendants concede in their motion, where a defendant seeks enforcement of a forum selection clause to transfer a case to the court of a foreign country, the Court evaluates this request under the doctrine of *forum non conveniens*. The doctrine of *forum non conveniens* "is an exceptional one that a court must use sparingly." *Deb v. Sirva, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). Because of its exceptional nature, "a defendant invoking it ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id*. at 806. Court's evaluating whether to grant dismissal pursuant to the doctrine *forum non conveniens* engage in a two-step analysis. First, as "it makes little sense to broach the subject of *forum non conveniens* unless an adequate alternative forum is available to hear the case," the court must determine if a there is an available and adequate alternative forum. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). An alternative forum is available if "all parties are amenable to process and are within the forum's jurisdiction," and is adequate if "the parties will not be deprived of all remedies or treated unfairly." *Id*. at 803. Second, if the court determines that an alternative forum is available and adequate, the Court must consider whether the relevant public interest factors support dismissal, including relative court congestion; the local interest in deciding localized disputes; the avoidance of problems arising out of conflicts of laws or application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Cerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). Crucially, an international forum selection clause cannot be enforced "if the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court" or "if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) (quoting *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993)). Defendants' argument fails at both steps.

***First***, Israel cannot be considered an adequate forum as Plaintiffs will be deprived of remedies if forced to proceed in Israeli court, and under Israeli law. Plaintiffs' claims arise under GIPA, an Illinois statute. *See* Compl. ¶¶ 51-61; 146-163. Illinois has an exceedingly strong interest in application of this law. During the floor debates over GIPA's 2008 amendment, the Illinois legislature noted Illinois' intense commitment to genetic privacy, noting, *e.g.*, that Illinois was "one of the first states in the nation to have a Genetic Privacy Act"; Illinois is "a leader in terms of protections of genetic privacy"; and GIPA is necessary to "to empower citizens of Illinois to be able to use technology such as DNA testing." Ill. 95th Gen. Assembly, Transcr. Debate (May 30, 2008), pp. 32-34.[14] The text of GIPA further reaffirms the legislature's commitment to genetic privacy, stating that:

> Despite existing laws, regulations, and professional standards which require or promote voluntary and confidential use of genetic testing information, many members of the public are deterred from seeking genetic testing because of fear that test results will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner…The public health will be served by facilitating voluntary and confidential nondiscriminatory use of genetic testing information.

410 Ill. Comp. Stat. Ann. 513/5(1)-(2).

Under the prospective waiver doctrine, a choice-of-forum and choice-of-law waiver is invalid where it prospectively waives the claimant's statutory rights. *Harris v. W6LS, Inc.*, No. 23 CV 16429, 2024 U.S. Dist. LEXIS 91687, at *6 (N.D. Ill. May 22, 2024). Just last year, in *Harris v. W6Ls, Inc.*, this District applied the prospective waiver doctrine to find that an agreement limiting the plaintiffs' claims to those available under federal law and that of the Otoe-Missouria Tribe of Indians was invalid pursuant to the prospective waiver doctrine, as it waived the plaintiffs' claims under applicable state law. *Id*. The same is true here. Defendants do not make any argument

[14] *Available online at*: https://www.ilga.gov/documents/house/transcripts/htrans95/09500276.pdf.

that Israeli law provides substantively similar protections to those enacted by the Illinois legislature through GIPA. Moreover, despite a diligent search, Plaintiffs' counsel have been unable to find any Israeli statute that would provide them with an analogous cause of action. Accordingly, Israel is not an available forum as, if forced to litigate in Israel under Israeli law, Plaintiffs will be deprived of the remedies available to them under Illinois law for Defendants' disclosure of their Genetic Testing Information. Under both the traditional *forum non conveniens* analysis and the prospective waiver doctrine, a forum selection clause that extinguishes Plaintiffs' state statutory rights cannot be enforced.

***Second***, the public interest factors weight in favor of Plaintiffs for the same reasons as Israel cannot be deemed an available forum. As stated above, Illinois has a strong interest in having its genetic privacy law applied to protect its citizens. This is a sufficient public interest to prevent dismissal. *See Cabrera v. Sas*, 777 F. Supp. 3d 900, 912 (N.D. Ill. 2025) (French forum selection clause notwithstanding, dismissal found inappropriate where claims were brough under American state statutory laws).[15]

Cases cited by Defendants do not compel a different result. In *Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.*, the relevant controversy involved a Mexican company bribing Mexican agents to sell medical devices to Mexican doctors in Mexico for use on

[15] Moreover, Defendants recognize that Illinois has strict protections regarding the collection of the biological characteristics of website users that they must abide by. As stated above, Defendants do not offer their "Photo Tagger" to Illinois residents, representing that they "do not, therefore, collect biometric information in [Illinois]." *See* f.n. 13, *supra*. As this Court is undoubtedly well-aware, Illinois' BIPA provides strict restrictions on the collection of such biometric information. *See* 740 Ill. Comp. Stat. Ann. 14/15. Defendants' compliance with BIPA demonstrates that, despite their arguments to the contrary, Defendants know that Plaintiffs may seek recompense under Illinois' privacy laws for their injuries. *See, e.g., Hemi Grp.,* 622 F.3d at 758 (finding that jurisdiction proper because "the fact that [defendant] excluded [residents of a specific state] from its customer pool shows both that [defendant] knew that conducting business with residents of a particular state could subject it to jurisdiction there and also that it knew how to protect itself from being haled into court in any particular state").

Mexican patients pursuant to contracts executed in Mexico with an agency of the Mexican government. 29 F.4th 351, 360 (7th Cir. 2022). Accordingly, the Seventh Circuit correctly concluded that the case did not present a local controversy to Indiana. *Id*. Likewise, the dispute in *Pomerantz v. Int'l Hotel Co., Ltd. Liab. Co.* was centered on a contract "signed…in Mexico to obtain membership in resorts located in Mexico." 359 F. Supp. 3d 570, 581 (N.D. Ill. 2019). Here, Plaintiffs here entered into their agreement with Defendants in Illinois, purchased Defendants' products in Illinois, used Defendants' Website while located in Illinois, suffered the privacy injuries described in the Complaint while residing in Illinois, and bring claims under Illinois' distinctive genetic information protection law. Unlike in *Instituto Mexicano* and *Pomerantz*, the ***only*** connection between this matter and the foreign forum sought by Defendants is the fact that one of the Defendants is headquartered in Israel. Illinois' public interest undoubtedly encompasses the prevention of injuries to its residents by foreign companies selling products within its borders, particularly considering Illinois' significant, well-documented interest in preventing the surreptitious disclosure of its residents' genetic information, as documented above.

## CONCLUSION

For these reasons, this Honorable Court should deny Defendants' motion, grant leave to amend to address any pleading deficiencies, and order all such other relief.[16]

[16] Under Rule 15, courts "should freely give leave" to amend a pleading "when justice so requires." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020). While Plaintiff contends sufficient facts are pled to support each cause of action and associated damages, should the Court be persuaded to dismiss any claim, Plaintiff respectfully requests leave to file a First Amended Complaint. Plaintiff submits that this

Date: September 19, 2025

Respectfully submitted,

_/s/ Mason Barney_
Mason Barney
Tyler J. Bean*
Sonjay C. Singh*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com
E: ssingh@sirillp.com

_/s/_
Matthew J. Langley (ARDC No. 6337129)
David S. Almeida (ARDC No. 6285557)
Britany A. Kabakov (ARDC No. 6336126)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Ph: (312) 576-3024
matt@almeidalawgroup.com
david@almeidalawgroup.com
britany@almeidalawgroup.com

*Attorneys for Plaintiffs and the Putative Classes*

is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

**CERTIFICATE OF SERVICE**

I, Mason Barney, hereby certify that on September 19, 2025, I filed the attached with the Clerk of the Court using the Court's electronic filing system and will send such filing to all attorneys of record.

*/s/ Mason Barney*
Mason Barney